**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM COOPER,

               Plaintiff,

vs.                               Case No.  3:05-cv-569-J-MMH

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.
_____/

## OPINION AND ORDER[1]

    **THIS CAUSE** is before the Court on Plaintiff's Complaint (Dkt. No. 1; Complaint) seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act.  Administrative remedies have been exhausted, and the case is properly before the Court.

    **I.**    **Background**

    At the time of the administrative hearing, Plaintiff was fifty-two years old and living alone.  Tr. at 194, 200.[2]  He had obtained a general equivalency diploma, id. at 53, and previously worked as a laborer, including, packaging shower enclosures, detailing cars for export, and various other day laborer positions, id. at 61-64.

_____

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Order of Reference (Dkt. No. 15).

[2]    The Transcript of Administrative Proceedings (Tr.) was filed on December 28, 2005, as an appendix to Defendant's Answer (Dkt. Nos. 11, 13).

Plaintiff filed applications for DIB and SSI on October 21, 2001, see id. at 24,181-83, alleging a disability onset date of January 16, 2002, see id. at 47, 181.  In his disability report, Plaintiff asserts that he is unable to work because he suffers from cirrhosis of the liver and hepatitis C.  Id. at 47.  Plaintiff indicated that, as a result of his liver condition, his ability to work was limited because he "[did]n't think" he would be able to "lift[,] climb[,] dig[,] etc." Id.  At the hearing, Plaintiff testified that his symptoms include abdominal swelling, fatigue, and pain in his right side and abdomen.  Id. at 197, 198-200.  He also stated that he experiences pain when he stretches, can sit comfortably for only forty-five minutes, and can walk only three to four blocks before having to stop.  Id. at 199, 202.

After the applications were denied initially, id. at 24, 184, and on reconsideration, id. at 25, 187, Administrative Law Judge (ALJ) Peter C. Edison, conducted a hearing on August 25, 2004, id. at 191.  Plaintiff, who was represented by counsel, testified at the hearing.  Id. at 194.  On March 11, 2005, the ALJ denied Plaintiff's applications.  See id. at 21.  In doing so, the ALJ found that Plaintiff could perform a significant range of light work, and that based on a framework application of the Medical-Vocational Rules (the grids), Plaintiff was not disabled.  Id. (Finding Nos. 10 & 11).  The Appeals Council (AC) denied Plaintiff's request for review on April 22, 2005.  Id. at 4.  Consequently, the Commissioner's decision became final.  See Sims v. Apfel, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000).  Plaintiff timely filed the Complaint on June 22, 2005.  Complaint at 1.

## II.    Standard of Review

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see also</u> 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[3] <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a). While the claimant generally bears the burden to prove that he or she is disabled, <u>see</u> 20 C.F.R. §§ 404.1512(a), 416.912(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy. <u>See</u> <u>Foote v. Chater</u>, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); <u>see also</u> <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam). It does not include "deciding the facts anew, making credibility determinations, or re-weighing

---

[3]     The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.

Step 4. Can the claimant perform his or her former work? If the claimant can perform his or past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. <u>See</u> 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f); <u>see also</u> <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237-40 (11th Cir. 2004); <u>Foote v. Chater</u>, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

the evidence." <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); <u>see</u> also <u>Dyer</u>, 395 F.3d at 1210; <u>Foote</u>, 67 F.3d at 1560.

The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." <u>Johnson v. Barnhart</u>, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), <u>aff'd</u>, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table decision); <u>see</u> <u>also</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Shinn ex rel. Shinn v. Comm'r of Soc. Sec.</u>, 391 F.3d 1276, 1282 (11th Cir. 2004); <u>Ellison</u>, 355 F.3d at 1275; <u>cf.</u> <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). Substantial evidence has been defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting <u>Falge</u>, 150 F.3d at 1322); <u>see</u> <u>also</u> <u>Ellison</u>, 355 F.3d at 1275; <u>Foote</u>, 67 F.3d at 1560. It is more than a scintilla but less than a preponderance of evidence. <u>See</u> <u>Dyer</u>, 395 F.3d at 1210; <u>Ellison</u>, 355 F.3d at 1275. In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole. <u>See</u> <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997); <u>Foote</u>, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards. <u>See</u> <u>Moore</u>, 405 F.3d at 1211; <u>Lewis v. Barnhart</u>, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); <u>Bridges v. Bowen</u>, 815 F.2d 622, 624 (11th Cir. 1987) (per

curiam).  The application of legal standards is closely scrutinized.  See Doughty, 245 F.3d at 1278.  Indeed, where the Commissioner has used incorrect legal standards or failed to explain her decision adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision.  See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.    Summary of Argument

Plaintiff raises three issues on appeal.  See Memorandum in Support of Plaintiff's Position (Dkt. No. 16; Plaintiff's Memorandum) at 1.  Initially, Plaintiff asserts that the ALJ's residual functional capacity (RFC) determination was flawed because he failed to consider Plaintiff's foot impairment in combination with Plaintiff's other impairments.  See id. at 6-8. He also argues that the ALJ improperly evaluated the medical opinions of Joseph D. Allen, Physician's Assistant - Certified (PA-C), and Suparna Gulani, M.D.  See id. at 11-13.  Lastly, Plaintiff contends that the ALJ's exclusive reliance on the grids[4] at step five of the disability determination was in error.  See id. at 8-11.

### IV.    Discussion

### A.    RFC Determination

The ALJ found, based on Plaintiff's testimony, the testimony of Plaintiff's medical sources, and the evidence in the record, that Plaintiff retained the RFC to perfrom light work.[5]

---

[4]     Grids refers to the Medical-Vocational Guidelines of Appendix 2 of the regulations (20 C.F.R. Part 404, Subpart P and Regulations).

[5]     Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light
(continued...)

See Tr. at 6-7.  However, Plaintiff contends that, in determining his RFC, the ALJ failed to consider the impact of Plaintiff's foot condition on his ability to stand and walk.  See Plaintiff's Memorandum at 6.  In response, the Commissioner argues that Plaintiff's foot condition did not impose functional limitations that would impair Plaintiff's ability to perform light work.  See Memorandum in Support of the Commissioner's Decision (Dkt. No. 17; Commissioner's Memorandum) at 5-6.

The ALJ did not independently characterize Plaintiff's foot condition as severe.  See Tr. at 16.  However, he was required to consider the effects of Plaintiff's foot condition in combination with the effects of all of Plaintiff's impairments when determining the RFC.  See 20 C.F.R. §§ 404.1545(e), 404.1523, 416.945(e), 416.923; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam).  Indeed, an ALJ must "make specific and well-articulated findings as to the effect of the combination of impairments . . . ."  Walker, 826 F.2d at 1001 (citations and quotations omitted).  Nevertheless, the Eleventh Circuit has held that an ALJ properly considered the plaintiff's alleged impairments in combination when the ALJ stated that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from an impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity . . . .'"  Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (emphasis in original).

In the instant decision, the ALJ thoroughly discussed the evidence regarding each of Plaintiff's individual impairments, including his foot condition.  See Tr. at 16-17.  In addition,

---

[5](...continued)
work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b); 416.967(b).

the ALJ found that Plaintiff had an "impairment or <u>combination</u> of impairments," considered severe under the regulations. <u>Id.</u> at 16 (emphasis added).  In particular, he found only Plaintiff's chronic liver disease (cirrhosis) and history of hepatitis C were severe impairments. <u>Id.</u>  However, before determining Plaintiff's RFC, the ALJ specifically stated that he "careful[ly] consider[ed] [ ] the medical evidence in its entirety, including the opinions of the treating sources, state agency medical consultants, symptoms alleged by the claimant and credibility . . . ." <u>Id.</u> at 19.  Thus, the Court finds that the ALJ considered all of Plaintiff's impairments in combination.

Next, although Plaintiff's argument was phrased as contesting the ALJ's failure to consider his foot condition in combination with his other impairments, the substance of his argument appears to be that the ALJ should have found Plaintiff's foot condition to be a severe impairment. <u>See</u> Plaintiff's Memorandum at 6-8; Commissioner's Memorandum at 5.  The analysis set forth in the Code of Federal Regulations requires the ALJ to determine whether the claimant suffers from a severe impairment at step two of the sequential inquiry. 20 C.F.R. § 416.920(c); 404.1520(c).  "A severe impairment is one that is more than 'a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.'" <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (quoting 20 C.F.R. § 416.924(c)).  However, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); 404.1521(a).

In determining whether a claimant's impairment or impairments are severe, the ALJ must determine whether medical evidence establishes an impairment or combination of

impairments of such severity as to be the basis of a finding of inability to engage in any substantial gainful activity.  <u>See</u> Social Security Ruling (SSR) 85-28.  The standard to be utilized in determining whether a particular impairment is "severe" has been defined as follows: "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal affect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Bridges</u>, 815 F.2d at 625 (quoting <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir. 1984)).

In this case, the ALJ considered and discussed the treatment notes regarding Plaintiff's foot condition.  <u>See</u> Tr. at 17.  In fact, he noted that, on October 23, 2002, Plaintiff had a painful callous on his right foot, a "right plantar flexed fourth metatarsal," that was debrided.  <u>Id.</u>  The ALJ further acknowledged that Plaintiff continued to receive treatment and debridement of that foot in follow up visits, through July 30, 2004.  <u>Id.</u>  However, he did not consider Plaintiff's foot condition to be a severe impairment.  <u>Id.</u> at 16.

Upon review of the record, the Court finds substantial evidence supports the ALJ's determination that Plaintiff's foot condition is not a severe impairment.  The treatment notes do not indicate any functional limitations related to Plaintiff's foot.  <u>Id.</u> at 119-129, 138. Indeed, at each appointment, the callous was debrided and Plaintiff was continually told to wear new or appropriate shoes.  <u>Id.</u>  Further, Plaintiff never complained that his ability to work, walk or stand was affected by his foot condition in his disability reports.  <u>Id.</u> at 47, 72. Even at the hearing, neither Plaintiff nor his attorney discussed Plaintiff's foot condition nor any limitations arising from that condition.  <u>See id.</u> at 194-203.  Lastly, the Court notes that the second State Agency physician to review Plaintiff's record also did not suggest any

limitations attributable to Plaintiff's foot condition. Id. at 110-17. Accordingly, the Court finds that the ALJ's determination that Plaintiff's foot condition was neither a severe impairment nor an impairment that would preclude him from performing the standing and walking required for light work, was based on substantial evidence.

### B.      Treatment of Medical Opinions

Plaintiff contends that the ALJ did not treat the medical opinions of Joseph D. Allen, PA-C, and Suparna Gulani, M.D., appropriately. See Plaintiff's Memorandum at 11-14. First, Plaintiff asserts that "the ALJ's reading and analysis" of Mr. Allen's opinion was in error. Id. at 11-12. Next, Plaintiff argues that the ALJ failed to consider Dr. Gulani's opinion altogether. Id. at 12-13. The Court will briefly review the pertinent evidence in the record before turning to Plaintiff's arguments.

Plaintiff was seen by Mr. Allen, in the Division of Gastroenterology, in 2001 and 2002, for treatment of Plaintiff's cirrhosis of the liver with esophageal varices. See Tr. at 130-134. It appears that at the end of each visit, Mr. Allen sent a letter outlining Plaintiff's illness and his intended treatment to Cynthia Debruno, M.D. See id. However, there is no evidence that Dr. Debruno reviewed or agreed with Mr. Allen's findings. See id. On December 18, 2002, Mr. Allen completed a Medical Verification Report (Report) for the Florida Department of Children & Family Services, regarding Plaintiff's illness. Id. at 86. In the Report, Mr. Allen opined that Plaintiff's "liver cirrhosis (decompensated)" totally prevented Plaintiff from employment of any type for an indefinite period. Id. He further explained that Plaintiff's condition was irreversible and may require a liver transplant. Id. Additionally, while the Report stated that a Doctor's Stamp was required, it did not include one. Id.

Fourteen months later, on February 18, 2004, Dr. Gulani responded to a Request for Medical Information from the City of Jacksonville, Mental Health and Welfare Division (Medical Request).  <u>See</u> <u>id.</u> at 118.  In the Medical Request, Dr. Gulani stated that Plaintiff was diagnosed with liver cirrhosis and hepatitis C and that his prognosis was poor.  <u>Id.</u>  Dr. Gulani further opined that Plaintiff could not return to work as a laborer and could not work at all because of his pain.  <u>Id.</u>  However, when asked to provide objective testing results upon which her opinions were based, Dr. Gulani merely stated:  "liver cirrhosis, waiting for transplant."  <u>Id.</u>

### 1.    Joseph D. Allen, PA-C

Although the ALJ discussed the Report filled out by Mr. Allen, he incorrectly indicated that the Report was filled out by J. D. Jones, PA-C, instead of J. D. Allen, PA-C.  <u>Id.</u> at 16. He then noted that the opinion in the Report, that Plaintiff was totally prevented from employment, was an issue reserved to the Commissioner.  <u>Id.</u>  The ALJ also stated that "a physician's assistant cannot provide a medical opinion" and that, in addition to the fact that the Report was not reviewed or co-signed by a physician, a physician's assistant's opinion is not entitled to controlling weight.  <u>Id.</u>

In questioning the ALJ's treatment of Mr. Allen's opinion, Plaintiff points out that the ALJ inaccurately referred to the Report as being submitted by Mr. J. D. Jones, instead of Mr. J. D. Allen.  <u>See</u> Plaintiff's Memorandum at 11-12.  However, the Court finds, based upon the substance of the ALJ's discussion, that the ALJ was referring to the Report completed by Mr. Allen, <u>see</u> Tr. at 16, and merely made a typographical error when he stated that the Report was completed by J. D. Jones, PA-C, instead of J. D. Allen, PA-C.  This mistake was

harmless.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (finding the ALJ's misstatement harmless error when he actually applied the correct factors).

Next, Plaintiff argues that although a finding that he cannot work is an issue reserved for the Commissioner, the ALJ erred in application of the law because he stated that "a physician's assistant cannot provide a medical opinion."  See Plaintiff's Memorandum at 12. An ALJ must evaluate all "medical opinions."  See 20 C.F.R. §§ 404.1527(d); 416.927(d) ("Regardless of its source, we will evaluate every medial opinion we receive").  However, pursuant to the regulations, only physicians, psychologists, or other acceptable medial sources can give "medical opinions."  Id. §§ 404.1527(a)(2), 416.927(a)(2); SSR 06-03p. The regulations list the following professionals as falling within the definition of an acceptable medical source: (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrist; (4) licensed podiatrists; and (5) qualified speech-language pathologists.  See id. §§ 404.1513(a); 416.913(a).  Mr. Allen, as a physician's assistant, does not fit within any of these categories of professionals.  Thus, the ALJ did not commit a legal error when he stated that Mr. Allen could not provide a "medical opinion."

In addition, to the extent Plaintiff's argument can be construed as one asserting that the ALJ erred in determining that Mr. Allen's opinion was not entitled to controlling weight, see Plaintiff's Memorandum at 11-13, the Court finds it without merit.  Although a physician's assistant's opinion may be used to show the severity of an impairment, see 20 C.F.R. §§ 404.1513(a), (d); 416.913(a), (d), it is not entitled to controlling weight, see SSR 06-03p (citing 20 C.F.R. §§ 404.1502, 404.1527(d), 416.902, 416.927(d)); SSR 96-2p.  While Plaintiff asserts that Mr. Allen's opinion is consistent with the opinion of Dr. Gulani, and thus,

the ALJ erred in rejecting the opinion, <u>see</u> Plaintiff's Memorandum at 12-13, this fact does

not alter the reality that Mr. Allen's opinion is not entitled to controlling weight.  Finally, the

Court finds that Mr. Allen's opinion concerned Plaintiff's ability to return to work, which, as

the ALJ correctly noted, is an issue reserved for the Commissioner, <u>id.</u> at 16, and, as such,

is not entitled to any special deference, <u>see</u> 20 C.F.R. §§ 404.1527(e)(2), (3); 416.927(e)(2)

- (3).  Thus, the ALJ did not err in his determination that Mr. Allen's opinion was not entitled

to controlling weight.

> ## 2.    Suparna Gulani, M.D.

While not entirely clear, Plaintiff also appears to assert that the ALJ erred in failing

to address Dr. Gulani's opinion, or in the alternative, the ALJ erred in not contacting Dr.

Gulani, in the event that the ALJ interpreted the treating information to be inadequate.  <u>See</u>

Plaintiff's Memorandum at 12-13.  The Commissioner did not address this issue.  <u>See</u>

Commissioner's Memorandum at 1-9.

An ALJ is required to consider all of the evidence in the claimant's record when

making a disability determination.  <u>See</u> 20 C.F.R. § 404.1520(a)(3); 416.920(a)(3).  In

addition, he or she must state the weight afforded to the evidence considered.  <u>See</u> <u>Ryan</u>

<u>v. Heckler</u>, 762 F.2d 939, 941 (11th Cir. 1985).  Specifically, the judge "should state the

weight he [or she] accords to each item of impairment evidence and the reasons for his [or

her] decision to accept or reject that evidence."  <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1574

(11th Cir. 1990); <u>see also</u> <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981); <u>Morrison</u>

<u>v. Barnhart</u>, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003); SSR 86-8 (indicating that the

decision must "describe the weight attributed to the pertinent medical, nonmedical and

vocational factors in the case[] and reconcile any significant inconsistencies").

In Cowart, the court recognized that "[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." 662 F.2d at 735 (internal quotation marks omitted). Similarly, the Seventh Circuit opined that "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984). The Third Circuit also has held that the case should be remanded when the ALJ fails to discuss significant, probative evidence and, as a result, the court is unable to discern whether the ALJ merely rejected the evidence or ignored it altogether. See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

In this case, the ALJ completely failed to discuss Dr. Gulani's opinion. See Tr. at 16-22. Nevertheless, Dr. Gulani's only opinion was that Plaintiff is unable to work secondary to his pain. See id. at 118. This opinion is on an issue reserved for the Commissioner. See Johnson, 268 F. Supp. 2d at 1323; see also 20 C.F.R. §§ 416.927(e)(1)-(3), 404.1527(e)(1)-(3). While an ALJ should not ignore such an opinion, see SSR 96-5p, it is not entitled to deference, see Johnson, 268 F. Supp. 2d at 1323; see also 20 C.F.R. §§ 416.927(e)(1)-(3), 404.1527(e)(1)-(3). Accordingly, as Dr. Gulani's opinion was not entitled to deference, the ALJ's failure to discuss it in this case does not warrant remand. However, because this case is due to be remanded for the reasons discussed below, on remand, the ALJ may wish to

more clearly address Dr. Gulani's opinion.[6]

Additionally, Plaintiff appears to assert that the ALJ should have contacted Dr. Gulani for further clarification of her opinion. See Plaintiff's Memorandum at 13. "Social Security proceedings are inquisitorial rather than adversarial" and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." Sims, 530 U.S. at 110-11 (citing Richardson v. Perales, 402 U.S. 389, 400-01 (1971)). This duty to develop the record may include re-contacting a medical source when that source's opinion is inadequate because it "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e); 416.912(e). However, the ALJ's failure to develop a full and fair record will not warrant remand unless the claimant can show prejudice. See Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997) (per curiam). In particular, the Court will consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id. (quoting Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995)).

Here, Plaintiff merely states that there is no "indication that Dr. Gulani was re-contacted in the event that any of the treating information had been interpreted as being 'inadequate' by the ALJ." Plaintiff's Memorandum at 13. However, he fails to suggest how

---

[6]   The Court notes that, while not affecting the determination that Dr. Gulani's opinion in this case is not entitled to deference, whether Dr. Gulani should have been considered a treating source or a one-time examiner is unclear. See Johnson, 268 F.Supp. 2d at 1323. Plaintiff appears to believe that Dr. Gulani was a treating source. See Plaintiff's Memorandum at 13. In addition, while the Medical Request only states that Dr. Gulani last examined Plaintiff on the day the Medical Request was completed, Tr. at 118, elsewhere in the record, Dr. Gulani's name was listed as the ordering and attending physician for an abdominal ultrasound done on December 15, 2003, see id. at 145-46. Thus, Dr. Gulani may have been a treating source. See 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). On remand, the ALJ may also wish to consider whether Dr. Gulani is a treating source.

Dr. Gulani's opinion was inadequate, how the ALJ's decision not to re-contact Dr. Gulani created an "evidentiary gap" in the record, or how that "gap" prejudiced him. See id. at 1-14. Nevertheless, as the ALJ completely failed to address Dr. Gulani's opinion, the Court declines to determine whether the ALJ may have concluded that her opinion was adequate or whether such a conclusion is supported by substantial evidence. While this failure may not require remand given the Plaintiff's failure to show prejudice or an evidentiary gap, as the case is due to be remanded for the reasons stated below, the ALJ may wish to consider whether he should re-contact Dr. Gulani, and if appropriate, state the reasons for his decision.

### C.    Exclusive Reliance on the Grids

Plaintiff next asserts that the ALJ erred in exclusively relying on the grids at Step Five of the disability analysis. See Plaintiff's Memorandum at 8-11. Specifically, Plaintiff argues that because his pain, a nonexertional impairment, significantly limited his ability to perform light work activities, the ALJ should not have relied on the grids.[7] See id. In support of this argument, Plaintiff cites his documented right foot pain, right upper quadrant pain, and abdominal pain and his own testimony at the hearing. See id. at 9-10. The Commissioner, however, states that the ALJ "properly determined that Plaintiff's ability to perform light work was only slightly diminished by nonexertional limitations . . ." and that "Plaintiff has failed to

---

[7]        Plaintiff also states that he is unable to perform a full range of light work. See id. However, the substance of Plaintiff's argument and citations focus entirely on whether his pain, a nonexertional impairment, precluded reliance on the grids. See id. Indeed, it appears to the Court that this argument, that he is unable to perform a full range of light work, is merely carried over from Plaintiff's assertion that his foot condition prevented him from performing the exertional demands of light work. As the Court determined that substantial evidence supports the ALJ's determination that Plaintiff's foot condition did not preclude him from performing the standing and walking required for light work activities, see supra at 7-9, it will not address Plaintiff's foot condition again here.

show that his particular conditions have resulted in symptoms of fatigue or pain that would preclude the sustained performance of an essentially full range of light work." Commissioner's Memorandum at 8-9.

After the RFC has been assessed and the ALJ finds that the claimant cannot perform his or her past relevant work, the ALJ proceeds to step five and may rely on the grids to determine whether a claimant can perform other work in the national economy. See 20 C.F.R. § 404.1520;   Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  When conducting this analysis, in appropriate circumstances, "'the grids may be used in lieu of vocational testimony.'"  Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996) (quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992)).  However, exclusive reliance on the grids is inappropriate when the claimant cannot perform a full range of work at a given exertional level or "when a claimant has a nonexertional impairment that significantly limits basic work skills."   Foote, 67 F.3d at 1558 (internal quotation marks omitted). Therefore, "[if] either condition exists, the ALJ [is] required to consult a vocational expert." Phillips, 357 F.3d at 1242.

The Eleventh Circuit "has interpreted a 'full range of employment' as the ability to do 'unlimited' types of work at the given exertional level." Phillips, 357 F.3d at 1242.  Thus, the ALJ has to determine first whether the claimant's exertional limitations prevent him from performing a full range or unlimited types of work at the given exertional level. See id.  If the ALJ concludes that the claimant does not have such an exertional limitation, the next question is whether the claimant has any nonexertional limitation. See id.  A nonexertional limitation would affect the claimant's ability to secure employment at the given exertional

-16-

level in the national economy if it significantly limits the claimant's basic work skills.  See id.;

see also Francis v. Heckler, 749 F.2d 1562, at 1567 (11th Cir. 1985) (holding that the ALJ

inappropriately relied on the grids because there was no vocational testimony on which the

judge could have relied to conclude that the claimant's impairment did not significantly limit

the range of work available to the claimant).  The Eleventh Circuit has further interpreted

limitations that "significantly limit basic work skills" to mean "limitations that prohibit a

claimant from performing 'a wide range' of work at a given work level."  Phillips, 357 F.3d

at 1243 (emphasis in original).  Additionally, an ALJ must make a specific finding as to

whether the nonexertional limitations preclude a wide range of work at a given level.  See

Foote, 67 F.3d at 1559.

In the instant case, the ALJ addressed the evidence in the record, including Plaintiff's

testimony, before determining that Plaintiff was able to perform the exertional demands of

light work.  Tr. at 19.  However, he also stated that Plaintiff's "capacity for light work is

slightly diminished by nonexertional limitations, which narrow the range of work he can

perform . . . ."  Id. at 20.[8]  In particular, the ALJ found that Plaintiff's impairment caused the

following nonexertional limitations, "limited balancing and must avoid concentrated exposure

to fumes, gases, odors, and poor ventilation as well as avoiding working with hazardous

heights and moving machinery."  Id.  The ALJ then determined, in light of the assigned

limitations, that Plaintiff was unable to return to his past relevant work at the medium to

heavy level.  See id.

---

[8]     Nonexertional limitations include mental and all physical limitations that affect an individual's ability to meet demands of a job other than the seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  See SSR 96-4p.

Turning to the Step Five determination, the ALJ acknowledged that if Plaintiff could perform a full range of light work, a finding of "not disabled" would be directed by an application of the grids.  Tr. at 20.  However, he concluded that a strict application of the grids was not possible "as the claimant has non-exertional limitations, which narrow the range of work he is capable of performing."  Id.  He then determined that "in concert with [Plaintiff's] testimony, the testimony of the medical sources, and other evidence of record . . . a decision of 'not disabled' may be reached by a framework application of [Section 202.13] and the appropriate application of Section 202.00(b)."  Id.  Accordingly, the ALJ found that Plaintiff could perform "other" jobs in significant numbers in the national economy. Id.

While an ALJ may rely on a framework application of the grids where a nonexertional impairment exists, he also "must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform."  Wolfe, 86 F.3d at 1077-78; see also Welch v. Bowen, 854 F.2d 436, 439-40 (11th Cir. 1988) (per curiam) (explaining that although an ALJ may rely on a framework application of the grids when the specific criteria are not met, the ALJ must make specific findings regarding the availability of jobs fitting the particular impairments).  In this case, the ALJ assigned several nonexertional impairments, however, he did not consider or address any independent evidence or testimony from a vocational expert (VE) to support the conclusion that Plaintiff's impairments would not significantly limit the range of jobs available to him or preclude Plaintiff from performing substantial gainful activity.  See Tr. at 14-22, 191-204.  Thus, despite the ALJ's statement that he was only using the grids as a

framework for his decision, id. at 20, a review of the transcript and the ALJ's decision indicates that the ALJ simply relied on the grids. Accordingly, the Court must consider whether it was proper for the ALJ to exclusively rely on the grids at Step Five of the disability determination.

After a considered review of the ALJ's decision, the Court is unable to determine whether the ALJ correctly relied on the grids at Step Five of the disability determination. As stated above, where nonexertional impairments exist, a judge may only rely exclusively on the grids after he specifically finds that those impairments do not significantly limit the claimant's ability to perform a wide range of work at a given exertional level. Here, the ALJ affirmatively determined that, based on Plaintiff's nonexertional limitations, he could not strictly apply the grids but would instead apply a framework application of the grids. See Tr. at 20. Apparently included in this determination was a finding that Plaintiff's nonexertional restrictions significantly limited Plaintiff's ability to perform light work. See Foote, 67 F.3d at 1558. However, earlier in his decision, the ALJ concluded that the assigned nonexertional limitations only "slightly diminished" Plaintiff's capacity for light work. Tr. at 20. While this second finding may very well be supported by substantial evidence and provide the proper basis for the ALJ's decision to exclusively rely on the grids, see Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam), it is inconsistent with the ALJ's later finding that he could not exclusively rely on the grids. As the two findings are at odds with one another, the Court is unable to determine whether the ALJ's exclusive reliance on the grids was appropriate. Accordingly, this case is due to be remanded for the ALJ to properly determine the impact of Plaintiff's nonexertional limitations on his ability to perform a significant range

of light work and reconsider his Step Five determination.[9]

Plaintiff further asserts that the ALJ could not rely on the grids in this case because of his pain. See Plaintiff's Memorandum at 9. However, the ALJ specifically addressed Plaintiff's complaints of disabling pain, Tr. at 19, and determined that Plaintiff's "statements concerning his impairments and their impact on his ability to work are generally not credible," id. at 18. As recognized in the regulations, "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." 20 C.F.R. §§ 404.1545(e), 416.945(e); see also Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). Accordingly, the Eleventh Circuit has articulated the following standard to determine when such testimony must be evaluated:

> The [Commissioner] must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560; see also Wilson v. Barnhart, 284 F.3d at 1225. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote, 67 F.3d at 1561. However, mere

---

[9]     The Court further notes that it is the Commissioner's position that the ALJ found Plaintiff's nonexertional limitations did not significantly limit his ability to perform light work jobs. See Commissioner's Memorandum at 8-9. Even if the Court were to agree with the Commissioner, that finding must be supported by substantial evidence. See Srylock, 764 F.2d at 836. In this case, the ALJ merely concluded, without putting forward the evidence he relied on, that Plaintiff's assigned nonexertional limitations only slightly diminished his ability to perform light work. See Tr. at 20. While the Court, on its own initiative, may have been able to find substantial evidence supporting this determination, as this case is due to be remanded for other reasons, the ALJ is reminded that on remand, if he wishes to rely exclusively on the grids, he should explain the basis for his determination that Plaintiff's nonexertional impairments do not preclude Plaintiff from performing a wide range of work at the assigned exertional level.

statements of disabling pain will not establish that the claimant is disabled. See 20 C.F.R. §§ 404.1529(a), 416.929(a).  Rather, those statements must be supported by medical evidence. See id.

In evaluating a claimant's subjective complaints, the Commissioner must make a finding as to the credibility of the claimant. See 20 C.F.R. §§ 404.1529(c), 416.929(c); see also SSR 96-7p. The regulations identify several factors that are relevant to the evaluation of the claimant's credibility. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ may, after considering the claimant's subjective complaints, choose to reject them as not credible. That determination will be reviewed for substantial evidence. See Marbury, 957 F.2d at 839 (citation omitted).  When the ALJ rejects the claimant's complaints of pain, he or she must articulate specific reasons for doing so. See id. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." SSR 96-7p. Failure to state specific reasons for discounting the claimant's subjective testimony requires that the testimony be accepted as true. See Wilson v. Barnhart, 284 F.3d at 1225.  However, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote, 67 F.3d at 1562.

Plaintiff asserts that his complaints are supported by his documented right foot pain, right upper quadrant pain, and abdominal pain. See Plaintiff's Memorandum at 10-11. The ALJ in this case considered and applied the dictates of 20 C.F.R. §§ 404.1529, 416.929 as

well as SSR 96-7p.  See Tr. at 19.  While the ALJ agreed that Plaintiff's impairments are of

the type to cause pain, he found that Plaintiff's testimony and complaints of disabling pain

were generally not credible.  See id. at 18-19.  The ALJ gave several reasons in support of

this finding.  See id.  In particular, the ALJ determined that Plaintiff's statements regarding

his impairments and ability to work are "generally not credible in light of the degree of

medical treatment required, discrepancies between the claimant's assertions and

information contained in the documentary reports, and the reports of the treating and

examining practitioner."  Id. at 18-19.  Therefore, if the ALJ's credibility finding is supported

by substantial evidence in the record, it will not be disturbed.

With regard to Plaintiff's foot pain, as discussed above, Plaintiff never alleged that his

foot pain limited his ability to work.  Further, while the treatment records refer to Plaintiff's

foot condition as painful, they fail to suggest any limitations arising from the condition.  See

Tr. at 119-129, 138.  Accordingly, there is substantial evidence in the record to support the

AlJ's decision not to include any functional limitations relating specifically to the pain caused

by Plaintiff's foot condition.

As for Plaintiff's abdomen and right upper quadrant pain, although the ALJ did set

forth several reasons for discounting Plaintiff's complaints, it is unclear what evidence the

ALJ relied on to support those reasons.  See id. at 18-19.  While under different

circumstances the Court may be able to extract evidence supporting the ALJ's decision from

the record, it declines to do so in this case.  As this case is due to be remanded for the ALJ

to re-evaluate Plaintiff's nonexertional limitations, on remand, the ALJ should more clearly

discuss the evidence he relied on to discount Plaintiff's subjective complaints of pain.

**V.     Conclusion**

In accordance with the foregoing, it is hereby **ORDERED**:

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: (1) consider whether he should address Dr. Suparna Gulani's opinion(s); (2) re-evaluate the impact of Plaintiff's nonexertional limitations on his ability to perform a significant range of light work and reconsider his Step Five determination; (3) reconsider Plaintiff's subjective complaints of pain and set forth more fully the specific reason(s) for discounting those complaints; and (4) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of February, 2007.

**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc2

Copies to:
Counsel of Record

-23-